## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEANERIC DUPAS, | |
| Plaintiff, | |
| v. | 3:19 - CV- 1600 (CSH) |
| WARDEN WILLIAM MULLIGAN, *ET AL.*, | |
| Defendants. | **MAY 8, 2022** |

## RULING ON PLAINTIFF'S OBJECTION
## (MOTION FOR CONSIDERATION) [Doc. 28]

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

Plaintiff DeanEric Dupas, a prisoner currently confined at MacDougall-Walker Correctional Institution ("MacDougall-Walker"), commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, alleging that Defendants – a dentist, a nurse, and prison officials at MacDougall-Walker and a Department of Correction ("DOC") dental director and regional health services officer – delayed providing "adequate medical care" for a serious dental need in violation of the Eight Amendment. Doc. 1 (Complaint), at 1, 7 (¶ 50).   Following Plaintiff's amendment of the Complaint and the Court's entry of its Initial Review Order ("IRO"), the sole remaining claim in the action is deliberate indifference to serious medical needs against  Regional Chief Operating Officer ("RCOO") Kirsten Shea for "delay in  referring or transferring Dupas to another facility for treatment (*i.e.*, to fill his cavities)."  Doc. 18, at 36.  That claim proceeds against Shea in her individual capacity for money damages. *Id.*

In response to the Court's IRO, on April 12, 2022, Plaintiff filed a motion to request an

extension of time to file a motion for reconsideration.  Doc. 25. Thirteen days had expired since the

entry of the Court's IRO, but  "[i]n light of Plaintiff's *pro se* status, the Court [decided to] treat him

leniently and grant him an additional fifteen (15) days within which to file his proposed motion for

reconsideration." Doc. 26.  In granting that extension, the Court directed that Plaintiff must file his

motion on or before April 29, 2022.  *Id.*

After the April 29 deadline had passed, on May 2, 2022, Plaintiff filed an "Objection" to the

Court's "Initial Review Order."  Doc. 28.  In that Objection, Dupas states, "The Plaintiff moves this

court to reconsider it's [sic]  decision to dismiss the deliberate indifference claim against Dr. Cuevas

and allow the claim to proceed." *Id.* at 2. Given this language and because Plaintiff is a *pro se*

litigant,  the Court liberally construes his "Objection" as a "Motion for Reconsideration," but denies

that motion for the reasons set forth below.

## II.  DISCUSSION

### A.  Procedural Defects

Plaintiff's motion for reconsideration  is procedurally defective, warranting denial on two

grounds.  First, it was filed *after* the final deadline of April 29, 2022, which the Court established

when it liberally granted Plaintiff an extension of time to file his motion.  Second, Plaintiff's

submission fails to include an accompanying memorandum providing  "the controlling decisions or

data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c).

#### 1. *Untimely Filed despite Extension*

With respect to timeliness, pursuant to Local Civil Rule 7(c), a motion for reconsideration

"shall be filed and served within seven (7) days of the filing of the decision or order from which

such relief is sought." D. Conn. L. Civ. R. 7(c).  Thirteen days after the Court issued its IRO,

Plaintiff filed his motion to extend the period of time within which to file a motion for reconsideration.  Despite the fact that the filing period had already expired *before* Plaintiff filed his motion to extend time, exercising leniency in light of his *pro se* status, the Court granted Plaintiff an ample extension till April 29, 2022 to file his motion.  Doc. 26.  The Court noted that this deadline provided Plaintiff "a total of thirty (30) days (more than four times the requisite seven-day filing period) to prepare and file his motion for reconsideration; therefore, no further extensions [would] likely be granted." *Id.*  Despite such plain language, Plaintiff filed his "Objection" on May 2, 2022, three days late.

### 2. *No Accompanying Memorandum*

Furthermore, in addition to being untimely, Plaintiff's "Objection" fails to include the requisite supporting memorandum.  As set forth in Local Civil Rule 7(c), all motions for reconsideration "shall be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked."  Plaintiff has failed to file such a memorandum. Instead, he submitted one "Objection" document in which he lists the "Court[']s finding" and his own "Argument."  Doc. 28, at 1-2.  He does not specify any facts he previously presented that the Court overlooked.  Nor does he cite any "controlling decisions" of law that the Court failed to consider, D. Conn. L. Civ. R. 7(c).

Because it is both untimely and lacks the requisite accompanying memorandum, the motion is denied on procedural grounds.

## B.  Substantive Grounds for Denial

### 1. *Standard for Reconsideration*

Alternatively, even were the Court to waive its procedural deficiencies, Plaintiff's motion

for reconsideration fails to meet the requisite substantive standard for such a motion.  The Second Circuit has articulated that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y.1990)).   In accordance with this standard, this District's Local Civil Rule 7(c) dictates that a motion for reconsideration "shall satisfy the strict standard applicable to such motions" and "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1).

As the Court previously advised Plaintiff in its Order granting him an  extension of time:

> [M]otions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions." [D. Conn. L. Civ. R.] 7(c)1. "Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) (citation omitted). Therefore, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). *See also Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'....")(citation omitted).

Doc. 26.

In the case at bar, Plaintiff has patently failed to meet the strict stand for reconsideration, as set forth in *Shrader* and incorporated in Local Civil Rule 7(c).  Plaintiff has failed to present any controlling decisions or facts  that the Court overlooked in its dismissal of the Eighth Amendment claim against Dr. Cuevas. Applying the seminal *Shrader* standard, there are thus no grounds to grant

reconsideration.

### 2. *Plaintiff's Objection*

In his "Objection," which this Court construes as a "motion for reconsideration," Plaintiff

seeks to reinstate his claim against Dr. Cuevas for deliberate indifference to his serious dental needs

in violation of the Eighth Amendment.  That dismissed claim stems mainly  from Plaintiff's desire

to be referred to a dentist at another prison to have his deep cavities filled without local anesthesia.

In its IRO, the Court dismissed that claim, stating:

> [A]s to Dupas's requested treatment – a referral to another dentist at Garner,
> Cheshire, or UCONN – there is nothing in the record to suggest that Cuevas had the
> authority to make such a referral. As dentist at MacDougall-Walker, he was
> authorized to perform necessary dental procedures; but Plaintiff presented no
> evidence to demonstrate that Cuevas had the power to refer inmates to dentists at
> other prisons or locations for dental work assigned to him. Absent factual allegations
> that he had the power to require others to perform dental work on his prison patients,
> the Court finds no subjective reckless disregard for Plaintiff's serious dental needs.
> Dr. Cuevas stood ready to perform the work; Plaintiff just had to consent to
> accepting local anesthesia. The Eighth Amendment deliberate indifference claim
> against Dr. Cuevas is dismissed. *See* 28 U.S.C.§ 1915A(b)(1).

Doc. 18, at 25.

In his "Objection," Plaintiff concurs that "it may be true that Cuevas cannot approve

referrals." Doc. 28, at 2. However, Plaintiff believes that it was "incumbent for [sic] him to make

the request to [RCOO]  Shea to refer Plaintiff elsewhere" to have his dental work done." *Id.*

"[M]onths went by and Cuevas failed to make such a recommendation to Shea." *Id.*

In its IRO,  the Court found that "[b]ased on his medical judgment, Dr. Cuevas offered

Plaintiff treatment for his cavities – fillings with local anesthesia."  Doc. 18, at 24.  "Plaintiff,

however, refused." *Id*.  Cuevas did not ignore Plaintiff's cavities or believe that he lacked the skill

to fill them.   Instead, he warned Plaintiff  that these cavities were likely to become "emergent"

5

under 12 months, so unless he accepted treatment, the infected teeth would likely "have to be extracted." *Id.* (citing Doc. 11-1, at 30 (Ex. 8) and 33 (Ex. 10)). Cuevas also informed Dupas that at any time he wanted to have his cavities filled with anesthesia, he could let him know and the work would be done. Doc. 11-1 at 35 (Ex. 11). The Court noted that "[c]ourts have repeatedly held that an omission of this nature does not amount to a constitutional violation." Doc. 18, at 24 (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Given his offer of treatment, Dr. Cuevas "exhibited no 'deliberate indifference' to the need for [the cavities] to be filled."[1] *Id.*

Moreover, in his Amended Complaint [Doc. 11-1], Plaintiff did not allege that Cuevas "failed to make . . . a recommendation to Shea" to refer him for treatment. Doc. 28, at 2 (¶ 8). Rather, Dupas asserted that he took such notice into his own hands. As he admits in his Objection, Plaintiff "ma[d]e these request [sic] to Shea." *Id.* at 2 (¶9). He himself filed multiple inmate request forms and prison grievances to alert RCOO Shea of his desire for a referral. As the Court noted, these submissions made Shea aware of Dr. Cuevas's recommended treatment and Dupas's preference to be referred to a dentist at another facility who would perform the necessary work without anesthesia. Doc. 11-1, at 32 (Ex. 9), 45 (Ex. 16), 108-09 (Ex. 29), 110 (Ex. 30), 111 (Ex.

---

[1] As the Court explained in its IRO, "Dr. Cuevas's decision was based on sound medical judgment." Doc. 18, at 23 (citing *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."); *Rush v. Canfield*, No. 13-CV-00191(S)(M), 2015 WL 12991158, at *6 (W.D.N.Y. Jan. 6, 2015) ("There is simply nothing in the record to suggest that [the] defendants' conduct in treating [the] plaintiff's back pain was based on anything other than medical judgment."), *aff'd,* 649 F. App'x 70 (2d Cir. 2016); and *Lighthall v. Vadlamudi*, No. 9:04-CV-0721, 2006 WL 721568, at *10 (N.D.N.Y. Mar. 17, 2006) ("Because every doctor does not treat an illness in the same way, the mere difference in treatment by a defendant physician does not amount to culpability" under the Eighth Amendment.)).

31), and 112-14 (Ex. 32).

As the dentist assigned to MacDougall-Walker, Dr. Cuevas's duty was to provide sound medical treatment to that prison's inmates. He offered such "appropriate treatment" to Plaintiff in a situation of developing urgency. Doc. 28, at 2 (¶ 11). Plaintiff rejected the treatment but now wishes to also impose a notice requirement on Dr. Cuevas to refer the work that he, as an inmate, rejected due to his personal refusal of anesthesia. Plaintiff now derives said notice requirement from Connecticut Department of Correction ("DOC") Administrative Directive 8.4. With respect to "dental emergency services," that directive states: "Each inmate with a dental emergency shall be referred immediately by health services staff for appropriate treatment." DOC Admin. Dir. 8.4.

However, per that directive, Plaintiff was already sent to dental "services staff," Dr. Cuevas, "for appropriate treatment." The issue of referral for service did not arise because Cuevas was the assigned MacDougall-Walker dentist and was ready to do the work. Plaintiff simply refused the treatment. As the Court stated in its IRO:

> [I]t is well established, "that mere disagreement over the proper treatment does not create a constitutional claim. [As] long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance* [*v. Armstrong*], 143 F.3d [698,] 703 [(2d Cir. 1998)] (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). Therefore, "disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment." *Sonds v. St. Barnabas Hospital Correctional Health Services*, 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001). For example, "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Id.* Instead, these issues "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Id.* (citation omitted.)

Doc. 18, at 17.

Furthermore, as the Court explained in its IRO, even if the directive Plaintiff presents had

been applicable, "[f]ailure to comply with an administrative directive . . . does not on its own give rise to a claim under 42 U.S.C. § 1983." Doc. 18, at 20 (citing, *inter alia*, *Schlosser v. Cook*, No. 3:19-CV-1971 (SRU), 2020 WL 3843699, at *2 (D. Conn. July 8, 2020) (citing *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011)).   Accordingly, an alleged violation of an administrative directive cannot form the sole basis for a claim.

Here, Plaintiff was offered appropriate treatment stemming from sound medical judgment. The dental work required was not beyond the level of dental care which Dr. Cuevas was able to perform. Moreover,  Dr. Cuevas made it clear to Plaintiff that he was ready, willing, and able to assist him by providing that dental work. *See, e.g.*, Doc. 18 , at 9-10 ("You have refused the recommended treatment. Let me know when you are ready to follow through with [the] recommended treatment.") (citing Doc. 11-1, at 35 (notes by Dr.Cuevas)). Plaintiff simply preferred another option, one which he expressed to Shea and ultimately led to his referral to Dr. Bruce Lichtenstein at Cheshire Correctional Center in May 2019. Doc. 11-1, at 115-21 (Ex. 33).

With respect to notice to RCOO Shea, given Dr. Cuevas's  medical judgment that the dental work should be performed *with* anesthesia, he likely would not have found referral to a dentist to perform the work *without* anesthesia advisable.  In any event,  it was clear from the Amended Complaint and accompanying documents that Shea received direct notice from Plaintiff of his desire to be referred to another dentist.  Plaintiff repeatedly informed Shea with inmate request forms and grievances that he wanted a referral.  Moreover, at one point, she investigated his request by asking Dr. Katz, the Statewide Dental Director, to review it. Doc. 18, at 9 (citing Doc. 11-1, at 110 (Ex.

30)).[2]  Both Shea and Katz thus knew that Cuevas mandated  the use of anesthesia to fill Dupas's

deep cavities and that Dupas proposed referral to another dentist without anesthesia as the solution.

Furthermore, according to allegations in the Amended Complaint, it was  RCOO Shea, not Cuevas,

who was in the position to make the referral and eventually did so.  *See* Doc. 18, at 26 (citing Doc.

11-1, at 120 (Ex. 33), 14 (¶ 36)).  Cuevas likely saw no need for such a referral because he was

competent to fill the cavities himself and believed anesthesia was necessary.  Any referral was thus

due to Plaintiff's personal preferences and within Shea's administrative powers.

In sum, Plaintiff has presented "no controlling decisions or data that the Court overlooked

– matters, in other words, that might reasonably be expected to alter the conclusion reached by the

court." *Shrader*, 70 F.3d at 257.  Dupas simply seeks to challenge the Court's dismissal of his Eighth

Amendment claim against Cuevas  with a new theory regarding notice, attempting to "relitigat[e]

old issues " by using a new theory and otherwise "tak[e] a 'second bite at the apple.'" *See Analytical

Survs.*, 684 F.3d at 52.  Lack of notice to Shea was not presented as a basis for Plaintiff's Eighth

Amendment claim against Cuevas in his Amended Complaint.[3]  Nor would such an allegation have

---

[2] After consulting with Dr. Katz, on December 20, 2018, Shea wrote to Dupas to inform him that Katz "agreed that the work to be performed should not be done without the appropriate level of anesthetic." Doc. 18, at 9  (citing Doc. 11-1, at 111 (Ex. 31)).

[3] Rather, Dupas alleged, and the exhibits attached to his Amended Complaint demonstrated, that Plaintiff provided notice to Shea throughout the relevant period that he wanted a referral. Consequently, Shea was aware that Dr. Cuevas refused to perform restorative work on Dupas's cavities without the appropriate level of anesthesia.  For example, on July 10, 2018, Plaintiff filed a grievance immediately afer seeing Dr. Cuevas that day.  Doc. 11-1, at 5-6 (¶¶ 14-15) (noting that "[t]o resolve the issue" of Cuevas "refus[ing] to do the filling work " without "novocaine," Dupas should be "sent to Garner, Cheshire, or UCONN"); Doc. 11-1, at 32 (Ex. 9).  In light of Dupas's repeated requests for referral, Shea consulted  Dr. Katz to determine whether she concurred with Cuevas  that anesthesia was necessary. In short, Shea was aware of Plaintiff's request for a referral and that it was based on Dr. Cuevas's stance on the necessary use of anesthesia.

altered the Court's conclusion to dismiss that claim. Even if Plaintiff had alleged lack of notice, Cuevas reasonably believed it was his responsibility to perform the restorative work regarding Plaintiff's cavities and repeatedly offered to do so. He was not deliberately indifferent to Plaintiff's serious dental needs.

Given Plaintiff's failure to provide data or controlling decisions that the Court overlooked, his motion for reconsideration will be denied.

### III. CONCLUSION

For the foregoing reasons, construed as a motion for reconsideration, Plaintiff's "Objection" [Doc. 28] is DENIED. The Eighth Amendment claim against Dr. Cuevas for deliberate indifference to Plaintiff's serious dental needs remains dismissed.

It is SO ORDERED.

Dated: New Haven, Connecticut
        May 8, 2022

                            _/s/Charles S. Haight, Jr._____
                            CHARLES S. HAIGHT, JR.
                            Senior United States District Judge